UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

TREVOR MILLER,                                )
                                              )
                    Plaintiff,                )
                                              )
          v.                                  )    No. 1:25-cv-02613-JRO-KMB
                                              )
BRAXTON DAVIS SGT.,                           )
J. BONNER Officer,                            )
C. WELCH SGT.,                                )
A. JOHNSON Officer,                           )
AYENIA Officer,                               )
IVINS SGT.,                                   )
ALISHA RICHIE Nurse,                          )
DESIRA MCHOLMES Nurse,                        )
KERUS DR.,                                    )
                                              )
                    Defendants.               )

**ORDER SCREENING COMPLAINT AND
DIRECTING FURTHER PROCEEDINGS**

Plaintiff Trevor Miller is a prisoner currently incarcerated at Correctional Industrial Facility ("CIF").  He filed this civil action about alleged mishandling of his mental illness at CIF. Because the plaintiff is a "prisoner," this Court must screen the complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c).

**I. SCREENING STANDARD**

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).  To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020).

1

Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. THE COMPLAINT

Miller's factual allegations are accepted as true at the pleading stage. *See Lisby v. Henderson*, 74 F.4th 470, 472 (7th Cir. 2023).

Miller has named nine defendants: Sgt. Braxton Davis, Officer J. Bonner, Sgt. C. Welch, Officer A. Johnson, Officer Ayenia, Sgt. Ivins, Nurse Alisha Richie, Nurse Practitioner (NP) Desira McHolmes, and Dr. Kerus.

Miller's allegations are summarized as follows. Under relevant policy, upon notification of a potential risk that an inmate may engage in self-harm, personnel are to (1) call for additional personnel, (2) maintain clear visual on that inmate, (3) when additional personnel arrive, remove the inmate from his cell and take measures to prevent the inmate from accessing items that could be used for self-harm, and (4) contact the "mental health practitioner" to assess the situation. Dkt. 2 at 5–6. Then, after assessment, "he will be placed on suicide watch . . . for approx[imately] 72 hours or deemed suitable to return to General Population." *Id.* at 6.

The Indiana Department of Correction classified Miller as "SMI" which is a description for inmates who suffer from serious mental illnesses and have a history of self-harm attempts. Dkt. 2 at 5.  On September 8, 2024, Miller was housed in segregation at CIF and was having trouble maintaining his mental state.  Dkt. 2 at 5.  Miller alerted Sgt. Davis about his mental state.  *Id.*

Miller was removed from his cell and escorted to the medical department and met with NP McHolmes.  *Id.* at 6. Miller informed NP McHolmes

> of the previous events, the distress in which the events at hand [were] inflicting as well as the fact that the Plaintiff Miller suffers from a mental psychological illness that causes the Plaintiff uncontrollable urges to inflict injuries upon his person with all intentions of bring[ing] his existence to an end. The Plaintiff expressed that this [was] one of those times and [was] pleading for help.

*Id.* at 7.  NP McHolmes telephoned Dr. Kerus, who is the "mental health practitioner," to apprise her of the current situation.  *Id.*  NP McHolmes had an "almost nonexistant" ability to assess Miller's mental state but nonetheless told Dr. Kerus that Miller "looks alright."  *Id.*  Dr. Kerus refused to place Miller on suicide watch, relying solely on NP McHolmes's perception without taking into account that NP McHolmes was not specifically trained to assess psychological symptoms.  *Id.*

As Sgt. Davis escorted Miller back to his cell, Miller pleaded with him to contact his superiors to get suicide watch approved.  *Id.* at 8.  Miller expressed an intention to make a suicide attempt.  *Id.*  After Miller was returned to his cell and Sgt. Davis left the range, Miller fashioned a makeshift noose and attempted to hang himself.  *Id.* at 9.

3

An inmate in a neighboring cell got Sgt. Davis's attention. *Id.* When Sgt. Davis arrived at Miller's cell front, Miller was unable to breathe, unable to unfasten himself, and was semiconscious. *Id.* Sgt. Davis administered his chemical agent instead of rendering aid. *Id.* Miller was cut loose from the noose and laid on the floor. *Id.* NP McHolmes arrived at the scene and said "you really did it," and stated she was not certain why suicide watch was not authorized. *Id.* at 10. Sgt. Davis took Miller for a decontamination shower, but because Miller was not released from restraints, he could not decontaminate his hands, and the chemical agent also washed over his chest and genitals, causing discomfort, irritation, and a burning sensation. *Id.* at 10. Miller was denied a change of clothing. *Id.* at 11.

Sgt. Davis "shook down" Miller's cell to remove all items that could be used for self-harm, but missed a pair of corded earbuds, and on September 10, 2024 (while still on suicide watch), Miller attempted to hang himself with a noose fashioned out of the earbuds. *Id.* Sgt. Davis discovered Miller, administered a chemical agent, and called for assistance. *Id.* Miller still had the noose tightened around his neck. *Id.* Sgt. Ivins arrived, unsecured the cell door, and rendered aid. *Id.*

On December 2, 2024, Miller again was experiencing mental instability and asked Sgt. Davis for help. *Id.* at 13. Sgt. Davis told Miller he would have to wait until Sgt. Davis dealt with a flooded toilet in another cell, even though the water was turned off and the matter was not urgent. *Id.* Sgt. Davis instructed Officer Ayenia to maintain constant visual contact with Miller. *Id.*

4

Miller was eventually escorted to the medical department, suicide watch with close observation was ordered, and Miller was sent back to his cell.  *Id.* at 14.  As he was escorted to his unit, Sgt. Davis belittled Miller and complained about the extra work he caused.  *Id.* at 15.  Miller was not returned to his cell immediately but instead was taken to the shower room, where he remained for several hours.  *Id.* at 16.  Officer Ayenia issued Miller a suicide smock and suicide blanket, both of which were wet and smelled of feces and urine.  *Id.*  Miller informed Officer Ayenia of the condition of the items, but Officer Ayenia did nothing.  *Id.*

The flooded toilet issue was still ongoing, and Sgt. Davis and Officer Ayenia opened a side door to squeegee out the wastewater.  *Id.* at 17.  The side door was next to Miller's cell, which became very cold since it was December.  *Id.*  Sgt. Davis and Officer Ayenia also intentionally diverted some of the wastewater into Miller's cell as they squeegeed the wastewater past his cell.  *Id.*  This continued for approximately 90 minutes.

Miller found a sharp piece of metal and began cutting himself while screaming for Officer Ayenia, Sgt. Davis, and Officer Johnson.  *Id.* at 18.  They ignored him, and one of the prison personnel said "fuck 'em, let him kill himself."  *Id.*  Miller proceeded to hit his head against the cell door.  *Id.*  Sgt. Davis arrived to investigate, observed Miller's injuries, and then left without addressing anything.  *Id.* at 18–19.  Sgt. Davis waited until the end of the shift to return to Miller and inform him that a nurse would arrive soon.  *Id.* at 19.  This did not

occur because Sgt. Davis did not call medical staff to alert them to Miller's needs. *Id.*

After the shift change, Miller's injuries and ongoing self-harm attempts were discovered and reported to Sgt. Ivins. *Id.* Miller was assessed by mental health personnel, who questioned how Miller was able to inflict so much injury on himself while on suicide watch. *Id.* Miller was returned to his assigned cell. *Id.* at 20. He resumed hitting his head against his cell door. *Id.*

On December 3, Miller was taken to the medical department to have his injuries treated. *Id.* at 22. Nurse Richie asked Miller, "why do you continue to do stupid shit [and] then ask for help afterwards?" and, "if you really want to end your life why not figure out the right way to do it and stop half assing it?" *Id.* Miller tried to explain his mental issues, and Nurse Richie called the explanation "bullshit." *Id.* at 23. Miller was returned to his cell and placed on close suicide watch, but the officers did not conduct the close monitoring that close suicide watch dictates. *Id.*

On December 5, Miller again informed staff of his mental state, but he was ignored. *Id.* Around 2 p.m., lights in the facility malfunctioned, and Miller asked Sgt. Welch and Officer Bonner to place him in the holding cell because that cell had a bit of natural light and was not completely dark. *Id.* He also asked to speak with mental health personnel. *Id.* Both requests were denied. *Id.* Miller found a long string, fashioned a noose, and was in the process of hanging himself when Sgt. Welch and Officer Bonner happened upon him. *Id.* at 24–25. Sgt. Welch laughed and asked what Miller was doing. *Id.* at 25. Officer Bonner and

6

Sgt. Welch both administered a chemical agent and then entered Miller's cell and freed Miller from the noose. *Id.* Miller was then taken to the holding cell. *Id.*

Miller requests compensatory and punitive damages. *Id.* at 27.

### III. DISCUSSION OF CLAIMS

Applying the screening standard to the factual allegations in the complaint, certain claims are dismissed while other claims shall proceed as submitted.

First, Miller has not stated a claim against Sgt. Ivins or Dr. Kerus. To state an Eighth Amendment deliberate indifference claim, Miller must allege facts from which the Court can infer that he was suffering from a serious medical condition, which "the risk of suicide is[,]" and that the defendant "(1) subjectively knew the prisoner was at a substantial risk of committing suicide and (2) intentionally disregarded that risk." *Lisle v. Welborn*, 933 F.3d 705, 717–18 (7th Cir. 2019). His allegations do not show Dr. Kerus or Sgt. Ivins acting indifferently to Miller's needs. As to Dr. Kerus, he alleges only that NP McHolmes contacted her to report on Miller's mental state, but that she downplayed the seriousness by saying that Miller seemed fine. Thus, she did not put Dr. Kerus on notice that Miller was at a substantial risk of engaging in self-harm. As to Sgt. Ivins, Miller's allegations are that Sgt. Ivins rendered aid and received reports of injuries and self-harm attempts after shift change. These allegations likewise do not state a claim for relief against Sgt. Ivins, so claims against both defendants are **dismissed**.

Second, Miller has not alleged a failure to intervene claim against any particular defendant. To state such a claim, he must allege that a defendant (1)

had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring. *See Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001); *see also Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). Miller has not made these allegations about any particular defendant, so all failure to intervene claims are **dismissed for failure to state a claim**.

The claims which shall proceed are the following: (1) deliberate indifference claims against Sgt. Davis, Officer Bonner, Sgt. Welch, Officer Johnson, Officer Ayenia, Nurse Richie, and NP McHolmes for their responses to Miller's medical needs; (2) excessive force claims against Sgt. Davis, Officer Bonner, and Sgt. Welch for their administration of chemical agent; (3) conditions of confinement claims against Sgt. Davis and Officer Ayenia for intentionally diverting wastewater into Miller's cell; (4) a conditions of confinement claim against Officer Ayenia for issuing Miller a suicide smock and suicide blanket that were wet and soiled with urine and feces, and (5) a negligence claim against Sgt. Davis for negligence in shaking down Miller's cell.

This summary of claims includes all of the viable claims identified by the Court. All other claims have been dismissed. If the plaintiff believes that additional claims were alleged in the complaint but not identified by the Court, he shall have **through June 2, 2026,** in which to file a motion to reconsider the screening order.

## IV. CONCLUSION AND SERVICE OF PROCESS

The following claims are proceeding in this action: (1) deliberate indifference claims against Sgt. Davis, Officer Bonner, Sgt. Welch, Officer Johnson, Officer Ayenia, Nurse Richie, and NP McHolmes; (2) excessive force claims against Sgt. Davis, Officer Bonner, and Sgt. Welch; (3) conditions of confinement claims against Sgt. Davis and Officer Ayenia; and (4) a negligence claim against Sgt. Davis.  All other claims have been dismissed.

The **clerk is directed** to terminate Dr. Kerus and Sgt. Ivins as defendants on the docket.

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to defendants Sgt. Davis, Officer Bonner, Sgt. Welch, Officer Johnson, Officer Ayenia, Nurse Richie, and NP McHolmes in the manner specified by Rule 4(d). Process shall consist of the complaint filed on December 30, 2025, dkt. [2], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to serve the Indiana Department of Correction and Centurion employees electronically.

Defendants Nurse Richie and NP McHolmes are identified as employees of Centurion. A copy of this Order and the process documents shall also be served on Centurion electronically. Centurion is **ORDERED** to provide the full name and last known home address of any defendant who does not waive service if they have such information. This information shall be filed ex parte.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**SO ORDERED.**

Date: 5/5/2026

_____
Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

TREVOR MILLER
263991
CORRECTIONAL INDUSTRIAL FACILITY (CIF)
CORRECTIONAL INDUSTRIAL FACILITY
Electronic Service Participant – Court Only

Electronic service to Indiana Department of Correction:
    Sgt. Braxton Davis
    Officer J. Bonner
    Sgt. C. Welch
    Officer A. Johnson
    Officer Ayenia
    (All at Correctional Industrial Facility)

Electronic service to Centurion
    Nurse Alisha Richie
    Nurse Practitioner Desira McHolmes